UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GEORGE BELCH,  )
                )
          Plaintiff,  )  Case No.: 2:10-cv-00201-GMN-LRL
  vs.  )
                )  **ORDER**
LAS VEGAS METROPOLITAN POLICE  )
DEPARTMENT, et al.,  )
                )
          Defendants.  )
                )

This excessive force case arises out of an incident where Plaintiff was detained in response to an emergency call to police reporting that Plaintiff was trying to break into a house. Pending before the Court is Defendants' Motion to Dismiss (ECF No. 7). Plaintiff filed a Response (ECF No. 10) and Defendants filed a Reply (ECF No. 11).

Defendants ask the Court to dismiss Plaintiff's Negligent Training and Supervision cause of action and to rule that Plaintiff's first cause of action should be considered only under the standards of the Fourth Amendment, not the potentially broader standards of the Fourteenth Amendment's Due Process Clause. For the reasons that follow, the Motion to Dismiss will be GRANTD in part, and DENIED in part.

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff George Belch is either separated or divorced from Annie Belch. Annie Belch lives with their minor daughter and Annie's boyfriend, Michael Petitta, in a house ("the residence") which is still owned by Plaintiff. On or about March 10, 2008, Plaintiff received a phone call at work from his daughter informing him that Petitta had assaulted her. (Compl. ¶¶ 26–27). Rather than call the police, Plaintiff went directly to the residence to speak with Petitta. (*Id.* ¶ 29). Plaintiff insisted that Petitta leave his property. (*Id.* ¶ 30).

During the confrontation, Annie Belch locked Plaintiff and his daughter out of the residence. (*Id.* ¶ 31). However, Plaintiff and his daughter forced their way into the house while Petitta was on the phone with Defendant Las Vegas Metropolitan Police Department ("Metro"), reporting that "someone was trying to break into my house." (*Id.* ¶¶ 32–33).[1]

Soon thereafter, Defendants Officer Melton, Officer Thiele, Officer Zinger, Officer Geiger, and Officer Keith arrived at the residence. (*Id.* ¶ 35). Before questioning anyone at the scene, Officer Melton twice commanded Plaintiff to "get to the ground," but rather than complying, Plaintiff each time responded "Why?" (*Id.* ¶ 39). Plaintiff alleges that after Officer Melton's third command, he began to comply but before he could reach the ground, Officer Melton forced him to the ground with the assistance of two other officers. (*Id.* ¶¶ 40–41). During the struggle, Officer Melton forced Plaintiff's head and neck to the ground with his forearm, and another officer pressed his knee into Plaintiff's back. The officers were only able to shackle one of Plaintiff's hands. (*Id.* ¶ 42–43). Eventually Plaintiff lost consciousness. (*Id.* ¶ 44).

When he awoke a few moments later both of Plaintiff's hands were shackled, and he felt as if one of his shoulders had been dislocated. (*Id.* ¶¶ 44–45). After he was restrained he was lifted to his feet, and Officer Melton questioned him regarding the incident, accusing him of kicking in the front door and possibly having struck someone inside the residence. (*Id.* ¶ 45).

Plaintiff was never arrested or charged and alleges that Defendants improperly took the word of Petitta without first investigating the incident and used excessive force in

///

---

[1] Incidentally, the fact that Plaintiff holds title to the home does not preclude his liability for attempted burglary in Nevada, as such a charge can be supported by attempted entry into "any house" with the intent to commit assault or battery. *See* Nev. Rev. Stat. § 205.060. The narrower common-law definition of burglary requiring entry into the "dwelling place of another" has been superseded by statute. *See id.*

1  restraining Plaintiff. (*Id.* ¶¶ 46–47).[2]

2  Plaintiff sued Defendants in this Court on eight causes of action: (1)–(2) 42 U.S.C. § 1983 (Excessive Force under the Fourth and Fourteenth Amendments, Equal Protection Under the Fourteenth Amendment, and Due Process Under the Fourteenth Amendment); (3) Negligence; (4) Negligent Training and Supervision; (5) Battery; (6) False Imprisonment; (7) Intentional Infliction of Emotional Distress ("IIED"); and (8) Negligent Infliction of Emotional Distress ("NIED"). Defendants have moved to dismiss the fourth cause of action alleging Negligent Training and Supervision and the § 1983 claims insofar as they rely on any theory besides the Fourth Amendment as incorporated through the Fourteenth Amendment.

## II.    RULE 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of

---

[2] There are two paragraph 47s in the Complaint. This citation includes both of them.

fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007)).

### III.   ANALYSIS

####   A.   Constitutional Claims under 42 U.S.C. § 1983

In his first cause of action, Plaintiff alleges that four of his constitutional rights were violated:

> a. The right not to be deprived of liberty without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;
> b.  The right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution;
> c. The right to be free from use of excessive force by law enforcement officers as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; and
> d.  The right to be free from pre-conviction punishment as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

(Compl. 8 ¶ 52, ECF No. 1.)  The claim marked "a" appears to be alleging a violation of procedural due process; the second claim is alleging a violation of equal protection; and the third and fourth claims appear to allege violations of the Fourth Amendment and substantive due process.  Although the Fifth Amendment is referenced in three of those claims, it is irrelevant here, as the due process clause in that amendment only applies to actions taken by federal actors, *see Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), and Plaintiff has not alleged that any of Defendants are federal actors.  Accordingly, Plaintiff cannot proceed under the Fifth Amendment's due process clause.

Defendants contend that Plaintiff's Fourteenth Amendment claims, as raised in his

first cause of action, should also be dismissed because the Fourth Amendment is applicable thus rendering inapplicable the Fourteenth Amendment.  In support of this argument, Defendants cite to *Armendariz v. Penman*, 75 F.3d 1311, 1318-20 (9th Cir. 1996) and assert "when the specific amendment provides the basis for the legal theory, the Fourteenth Amendment provides no additional protection," (Mot. 4:25-26, ECF No. 7).  Because the first cause of action "is essentially claiming excessive force," (Mot. 4:25-26, ECF No. 7), and because the Fourth Amendment applies in the context of excessive force claims, Defendants argue that the Fourteenth Amendment is wholly inapplicable and Plaintiff's claims based on it should be dismissed.

However, Defendants are only partially correct.  They misread and incorrectly paraphrase *Armendariz* and the other cases upon which they rely.  These cases do not stand for the proposition that the Fourteenth Amendment is wholly inapplicable if a claim can be construed to arise under the Fourth Amendment; these cases stand for the proposition that when a particular amendment--such as the Fourth--provides an explicit textual source of constitutional protection against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims," *Armendariz*, 75 F.3d at 1319 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Thus, a claim for substantive due process violations arising under the Fourteenth Amendment would be inappropriate where the Fourth Amendment is applicable, but claims arising under the Fourteenth Amendment for violations of procedural due process and equal protection are not foreclosed, *see, e.g., Sanders v. City of San Diego*, 93 F.3d 1423, 1428 (9th Cir. 1996); *Klarfeld v. United States*, 944 F.2d 583, 586-88 (9th Cir. 1991). Defendants' contention that the applicability of the Fourth Amendment renders inapplicable the Fourteenth Amendment is therefore overly broad.  Plaintiff's allegation of excessive

force will, indeed, be analyzed under the lens of the Fourth Amendment, rather than substantive due process. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a "substantive due process' approach"). But Plaintiff's procedural due process and equal protection claims will still be addressed under the Fourteenth Amendment. However, there will likely be little functional difference between analyzing the procedural due process claim solely under the Fourth Amendment and analyzing it under the Fourteenth Amendment because, in the context of a criminal investigation or proceeding, "the two standards are often identical, such that compliance with the Fourth Amendment also serves to comply with procedural due process," *Sanders*, 93 F.3d at 1428.

Further, Plaintiff's allegation of pre-conviction punishment may be analyzed under the substantive due process standard, as pretrial punishment of detainees is generally treated as violating substantive due process. *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979); *Byrd v. Maricopa County Sheriff's Department*, 629 F.3d 1135, 1137 n.3 (9th Cir. 2011). However, whether Plaintiff has actually pleaded sufficient facts to prove this and his other Constitutional claims is another question entirely, and one that the Court will not address at this time because it has not been briefed by the parties.

**B.     Negligent Training and Supervision**

Defendants argue that Plaintiff's claim of negligent training and supervision is barred by the discretionary immunity statute. *See* Nev. Rev. Stat. § 41.035. Defendants are correct.

In Nevada, certain government actors have discretionary immunity. Nev. Rev. Stat. § 41.032. This section of the code immediately follows the section that waives the state's sovereign immunity but retains the state's Eleventh Amendment protection. *See* Nev. Rev.

Stat. § 41.031. The discretionary act immunity statute specifically refers to actions brought "against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions." § 41.032. On its face, this statute does not immunize municipal governments or their employees, because, in light of modern case law, municipalities are considered independent corporations or "persons" with their own identities, not mere political subdivisions of a state. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The Nevada Supreme Court, however, has implicitly assumed that municipalities are political subdivisions of the state for the purposes of applying the discretionary act immunity statute. *See, e.g.*, *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (Nev. 1987). This construction is consistent with *Monell*, because the discretionary act immunity statute only protects state and municipal agencies against state-law causes of action.

The question remains as to whether there is discretionary immunity as a matter of law in this case. The statute immunizes municipal agencies and their employees against actions: "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2). In interpreting this statute, the Nevada Supreme Court has explicitly adopted the two-part test for discretionary immunity under the Federal Tort Claims Act, under which there is discretionary immunity when: (1) the allegedly negligent acts involve elements of judgment or choice; and (2) the judgment or choice made involves social, economic, or political policy considerations. *Martinez v. Maruszczak*, 168 P.3d 720, 722 (Nev. 2007) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991)). A court does not ask whether the official abused his or her discretion, *see* Nev. Rev. Stat. § 41.032(2), but only

whether the acts concerned a matter in which the official had discretion.  In other words, the immunity is not infinitely broad, but once it is determined that the acts involved judgment or choice on social, economic, or political policy considerations, the immunity applies even to abuses of discretion.

There is not, however, immunity for discretionary acts taken in bad faith. *See Falline v. GNLV Corp.*, 823 P.2d 888 (1991).  The *Falline* Court held that "bad faith" encompasses acts that are completely outside the authority of an official: "Bad faith . . . involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity.   In other words, an abuse of discretion occurs within the circumference of authority, and an act or omission of bad faith occurs outside the circumference of authority." *Id.* at 892 n.3.

In *Davis v. City of Las Vegas*, the Ninth Circuit noted that under *Falline* where an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead because of hostility toward a suspect or a particular class of suspects--such as members of racial minority groups--or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, then the officer's actions are the result of bad faith and he is not immune from suit. 478 F.3d 1048, 1060 (9th Cir. 2007).

Likewise, the Alabama Supreme Court aligns bad faith with "malice or willfulness." *See Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996).  The difference between non-actionable abuses of discretion and actionable bad-faith violations of rights therefore appears to turn on the officer's mental state; when he crosses the line from reckless as to a person's rights to malicious intent to violate them, he is no longer protected by the discretionary immunity statute, even if he initially satisfies the two-part test under *Martinez*.

"[D]ecisions relating to the hiring, training, and supervision of employees usually

involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *accord Bryan v. LVMPD*, 349 Fed. Appx. 132, 134 (9th Cir. Oct. 7, 2009); *see Neal-Lomax v. LVMPD*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) (citing *Vickers*, 228 F.3d at 950) (granting summary judgment on a negligent supervision and training claim in an excessive force case), *aff'd*, 2010 WL 997110 (9th Cir. Mar. 17, 2010). Because the Nevada Supreme Court has adopted the federal case law on discretionary act immunity in applying Nev. Rev. Stat. § 41.032, *see Martinez*, 168 P.3d at 722, and because no bad faith is alleged to have been present during the course of the allegedly negligent training and supervision, the Court finds, as a matter of law, that LVMPD has discretionary immunity as to the negligent training and supervision claim. *See Bryan*, 349 Fed. Appx. at 134; *Neal-Lomax*, 547 F. Supp. 2d at 1192. Accordingly, Plaintiff's fourth cause of action--negligent supervision and training--will be dismissed.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (ECF No. 7) is **GRANTED in part** and **DENIED in part**. Plaintiff's allegation of excessive force will be analyzed under the lens of the Fourth Amendment, rather than substantive due process, but his remaining Constitutional claims will be analyzed under the applicable provisions of the Fourteenth Amendment. Plaintiff's Fourth Cause of Action is **DISMISSED** without prejudice. Plaintiff has fourteen (14) days from the date of this Order to amend his Fourth Cause of Action, if he wishes to do so.

DATED this 21st day of March, 2011.

_____
Gloria M. Navarro
United States District Judge